UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEDESCHI AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. _____ |
| ) | |
| AGRI SYSTEMS, INC. d/b/a ASI ) | |
| INDUSTRIAL ) | |
| ) | |
| Defendant. ) | MARCH 20, 2014 |

## COMPLAINT

Plaintiff Bedeschi America, Inc. ("Bedeschi") respectfully submits the following Complaint against Defendant Agri Systems, Inc. d/b/a ASI Industrial ("ASI," and collectively with Bedeschi, the "Parties"):

### PARTIES, JURISDICTION, AND VENUE

1. Bedeschi is a Florida corporation with its principal place of business in Deerfield Beach, Florida. Bedeschi is a citizen of Florida. See 28 U.S.C. § 1332(c)(1).

2. Defendant ASI is a Montana corporation with its principal place of business in Billings, Montana. ASI is a citizen of Montana. See 28 U.S.C. § 1332(c)(1).

3. The amount in controversy in this case exceeds $75,000.00 exclusive of interest and costs.

4. This Court possesses federal diversity jurisdiction over this action because all adverse parties are completely diverse in their citizenship and the amount in controversy requirement is met. See 28 U.S.C. § 1332; *Herrick Co., Inc. v. SCS Communications, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001).

5. Venue is proper in this District because a substantial portion of the facts, circumstances, and transactions made the basis of this Complaint occurred within this District. *See* 28 U.S.C. § 1391(b)(2).

6. Moreover, this case arises out of a construction contract for the performance of work on a construction site located in Connecticut and, therefore, Connecticut General Statutes § 42-158m dictates that Connecticut is the proper forum for adjudication of any disputes related to the construction contract and requires that Connecticut law be applied to the same.

**FACTS**

7. Bedeschi is in the business of manufacturing and selling equipment to be used for bulk handling, heavy clay, and crushing. Its product line includes, in addition to traditional machinery and plants, a complete line of machines for raw material preparation in the power, cement, biomass, and mining industries.

8. Upon information and belief, ASI is in the business of bulk material processing, including assisting in the construction of biofuels production plants. It manages both agricultural and industrial projects for its clients and offers services ranging from drafting and civil engineering; steel fabrication; and materials purchasing.

9. In late 2011, ASI and Bedeschi began negotiations related to Bedeschi's manufacturing, and ASI's purchase of, certain equipment. Specifically, ASI required an Overhead Tripper and a Portal Reclaimer to be used for biomass stacking, storage, and reclaiming (the "Equipment").

10. Following its manufacture, the Equipment was to be permanently installed and utilized at a new biomass power plant located at 915 Norwich Road, Plainfield, Connecticut 06374-1923 (the "Plainfield Energy Biomass Power Plant" or the "Plant") being constructed by

2

ASI, as the general contractor, for the owner of the Plant, Leidos Constructors, LLC ("Leidos"), formerly known as SAIC Constructors.

11. The Parties negotiations culminated in the drafting of a written offer from Bedeschi to ASI regarding the purchase of the Equipment (the "AS SOLD offer"). A true and correct copy of the January 12, 2012 AS SOLD offer is attached as **Exhibit A**. The AS SOLD offer was drafted based upon specifications for manufacturing the Equipment which were provided to Bedeschi by ASI.

12. The AS SOLD offer also included certain "Sales Conditions." *See* **Exhibit A**, at pp. 19–21.

13. One of the Sales Conditions detailed a "Price Summary," which included prices to be paid by ASI for the Equipment.[1] *See* **Exhibit A**, at § 6.1, p. 19. The total cost, which included freight to the Plainfield Energy Biomass Power Plant in Connecticut, equaled $1,000,000.00 (the "Purchase Price"). *See id*.

14. Another Sales Condition detailed the payment terms for the sale. *See* **Exhibit A**, at § 6.2, p. 20. Those terms required ASI to pay 10% of the Purchase Price upon submission of a purchase order, 10% of the Purchase Price upon Bedeschi's delivery of certain certified drawings, and 80% of the Purchase Price upon the delivery of the equipment to Plainfield Energy Biomass Power Plant. *See id*.

15. Yet another Sales Condition required all of the Equipment to be delivered to the Plainfield Energy Biomass Power Plant by the week of November 18, 2012. *See* **Exhibit A**, §6.2, at p. 20.

16. ASI received and accepted the AS SOLD offer on or around January 12, 2012.

---

[1] In addition to the Equipment, the AS SOLD offer included a Laser Positioning System for the Overhead Tripper and Portal Reclaimer

3

17. Also on January 12, 2012, ASI issued Purchase Order # 3448 (the "Purchase Order") to Bedeschi. A true and correct copy of the January 12, 2012 Purchase Order # 3448 is attached as **Exhibit B**. The Purchase Order incorporated and was based upon the terms of the AS SOLD offer.

18. The Purchase Order contains a provision which awards attorneys' fees to the prevailing party as to any disputes arising between the Parties related to the Purchase Order. *See* **Exhibit B**, at Purchase Order Terms and Conditions, ¶ 16.

19. Following the acceptance of the AS SOLD offer and issuance of the Purchase Order, ASI paid 10% of the Purchase Price as a down payment. ASI also paid 10% of the Purchase Price upon Bedeschi's delivery of certain certified drawings to ASI, leaving 80% of the Purchase Price to be paid upon final delivery of the Equipment.

20. Prior to the final manufacture and delivery of the Equipment, ASI requested several changes and modifications to the specifications of the Equipment. ASI's changes created delays in the manufacturing and delivery of the Equipment. The Purchase Order contemplates such changes and resulting delays. *See* **Exhibit B**, at Purchase Order Terms and Conditions, ¶ 6.

21. The Equipment was ultimately manufactured and delivered to the Plainfield Energy Biomass Power Plant in accordance with Bedeschi's responsibilities under the AS SOLD offer and the Purchase Order.

22. The Equipment and various other components were delivered to the Plainfield Energy Biomass Power Plant in several shipments. However, in accordance with the AS SOLD offer and the Purchase Order, Bedeschi did not invoice ASI for the unpaid portion of the Purchase Price until the delivery was complete. The delivery was final by the middle of September, 2013.

23. After the final delivery, Bedeschi invoiced ASI for the unpaid portion of the Purchase Price (the "Invoice"). *See* Bedeschi America, Inc. Invoice No. 1360, a true and correct copy of which is attached as **Exhibit C**. The Invoice sought $785,800.00 in final satisfaction of the agreement between the Parties.

24. ASI did not pay the Invoice in a timely manner. Therefore, on October 17, 2013, Bedeschi sent a Non-Payment Notice letter to ASI asking for payment in full according to the Parties' agreement.

25. After repeated requests, ASI tendered a check to Bedeschi in the amount of $580,000 as a proposed partial payment for the Equipment. *See* October 21, 2013 letter of Robert Hamlin, CEO of ASI, to Thomas Turano, Vice President of Bedeschi, a true and correct copy of which is attached as **Exhibit D** (noting the partial payment offer). However, ASI attempted to condition payment of the remaining unpaid balance of $205,800.00 upon the Equipment being operational despite the fact that ASI's responsibility to pay the entirety of the Purchase Price was not made contingent upon the successful operation of the Equipment, and the AS SOLD offer and Purchase Order do not contain such a condition. *See id*. Moreover, ASI requested that Bedeschi execute a "Conditional Waiver And Release Upon Partial Payment" agreement in conjunction with acceptance of the $580,000.00 partial payment.

26. On October 31, 2013, Bedeschi responded to the offer of partial payment by letter and explained that it would be willing to accept the $580,000.00 as partial payment, but that it would not execute the "Conditional Waiver And Release Upon Partial Payment" agreement. A true and correct copy of the October 31, 2013 letter is attached as **Exhibit E**. Bedeschi also made clear in the October 31, 2013 letter that the agreement between the Parties did not contain a provision which allowed ASI to withhold payment of the unpaid balance until the Equipment

was operational. *See id*. Despite that, Bedeschi proposed that ASI escrow the remaining unpaid balance of $205,800.00 with a third-party escrow agent and that once the Equipment was operational Bedeschi would be paid out of the escrow account. *See id*. The letter gave ASI until November 4, 2013 to make a decision. *See id*.

27. Bedeschi received no initial response to its October 31, 2013 communication to ASI. Bedeschi sent a follow up letter to ASI on November 14, 2013 reiterating much of the same information in the October 31, 2013 letter and explaining that if ASI did not indicate soon that the $580,000.00 check was sent in error, it would deposit the check and insist on full payment of the remaining $205,800.00. A true and correct copy of the November 14, 2013 letter is attached as **Exhibit F**.

28. On November 14, 2013, Robert Hamlin sent an email to Thomas Turano in response to the November 14, 2013 letter from Bedeschi. A true and correct copy of the November 14, 2013 email is attached as **Exhibit G**. In it, Hamlin explained that ASI would not require the execution of the "Conditional Waiver And Release Upon Partial Payment" and that Bedeschi should feel free to deposit the $580,000.00 check. *See id*. Hamlin also indicated that ASI would not escrow the remaining money, but instead stated "Let's get the unit operational so we all feel comfortable." *See id*.

29. After crediting the $580,000.00 payment, $205,800.00 remained due and owing to Bedeschi under the Parties' agreement.

30. The Equipment was operational by January of 2014.

31. To date, ASI has refused to satisfy the unpaid balance of $205,800.00, necessitating this action.

## COUNT ONE – BREACH OF CONTRACT

32. Paragraphs 1 through 31 are hereby incorporated by reference as if more fully set forth herein..

33. Bedeschi and ASI entered into a valid and enforceable contract for the purchase of the Equipment.

34. Under the contract, ASI was required to satisfy 80% of the Purchase Price upon delivery of the Equipment.

35. The Equipment was manufactured and delivered according to the agreement between the Parties and ASI has failed to satisfy the remaining unpaid balance.

36. ASI's failure to pay is a breach of the Parties' agreement.

37. Therefore, as a natural, foreseeable, and proximate result of ASI's breach of the Parties' agreement, Bedeschi has been damaged in the amount of $205,800.00 and continues to incur damages in the form of the costs, fees, and expenses required to enforce the terms of the contract, including reasonable attorney's fees as provided for under the Purchase Order at ¶ 16. .

## COUNT TWO - UNJUST ENRICHMENT

38. Paragraphs 1 through 31 are hereby incorporated by reference as if more fully set forth herein.

39. Bedeschi manufactured and delivered the Equipment in accordance with the agreement between the Parties.

40. Bedeschi incurred significant expenses in fulfilling its obligations under the agreement between the Parties with an expectation of recovering those expenses and some measure of profit.

DER/B1075/1001/1201408v1
03/20/14-HRT/GAEC

41. ASI received the benefit of the agreement between the Parties without fully paying for that benefit.

42. ASI would have been in breach of its agreement with Leidos if Bedeschi had not fulfilled its obligations under the agreement.

43. To the extent that ASI has been paid by Leidos for the Equipment provided by Bedeschi, ASI has been unjustly enriched because ASI has not correspondingly fulfilled its payment responsibilities to Bedeschi.

44. Bedeschi has been harmed by ASI's failure to fulfill its obligations under the agreement between the Parties and Bedeschi is entitled to restitution equal to the expenses it paid to fulfill the contract and its lost profits.

## COUNT THREE - FRAUD

45. Paragraphs 1 through 31 are hereby incorporated by reference as if more fully set forth herein.

46. Both prior to and in his October 21, 2013 letter, Robert Hamlin, as agent and representative of ASI, falsely represented that ASI would pay Bedeschi the unpaid portion of the Purchase Price when the Equipment was operational. *See* **Exhibit D**.

47. Robert Hamlin, again on behalf of ASI, confirmed that false representation in his November 14, 2013 email to Thomas Turano. *See* **Exhibit G**.

48. Robert Hamlin, as representative of ASI, knew that the representation was false when it was made because ASI had no intention of paying Bedeschi when the Equipment was operational.

49. However, Robert Hamlin, on behalf of ASI, made the false representation in order to induce Bedeschi to get the Equipment operational so that it could satisfy its obligations to Leidos.

50. Bedeschi relied on Robert Hamlin's representations as an indication that ASI might finally pay Bedeschi the unpaid balance of the Purchase Price once the Equipment was operational.

51. Bedeschi took steps to ensure that the Equipment was made operational, and the Equipment was operational by January of 2014.

52. Bedeschi performed additional work and incurred additional expenses not required by the contract based on Robert Hamlin's misrepresentation.

## COUNT FOUR - CUTPA

53. Paragraphs 1 through 52 of Count Three are hereby incorporated by reference as if more fully set forth herein.

54. At all times material hereto, ASI was a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

55. ASI is engaged in trade and commerce within the State of Connecticut.

56. The above-pleaded acts and omissions are unfair, deceptive, immoral, unethical, unscrupulous, oppressive and have caused substantial injury to Bedeschi.

57. Pursuant to Conn. Gen. Stat. § 42-100g(c), a copy of this Complaint has been mailed to the Attorney General's Office for the State of Connecticut.

58. As a direct and proximate result of the above-pleaded acts, Bedeschi has sustained monetary losses, as well as additional incidental and consequential expenses and damages.

WHEREFORE, plaintiff seeks:

1. Compensatory damages;

2. Exemplary damages;

3. Punitive damages under Conn. Gen. Stat. § 42-110g;

4. Reasonable attorney's fees and costs of this action;

5. Reasonable attorney's fees and costs of this action under Conn. Gen. Stat. § 42-110g; and

6. Such other relief as the Court deems just and equitable.

                Plaintiff: BEDESCHI AMERICA, INC.

                By: */s/ David E. Rosengren*
                David E. Rosengren (BBO# 652935)
                McElroy, Deutsch, Mulvaney & Carpenter, LLP
                One State Street, 14th Floor
                Hartford, CT 06103
                Phone: (860) 522-5175
                Fax No: (860) 522-2796
                drosengren@mdmc-law.com